and we are ready to hear from the appellant. Mr. Sandiford, you must be on mute. Are you on mute? No, I'm not. Okay, you're good. I can hear you now. Maybe you're just too far away. Sorry about that. I'll try to speak up. My name is Dean Sandiford and I represent Hunter Venezia. The parties agreed that the City of Lakewood Municipal Code did not authorize the impoundment in this case. That should be disposited because properly construed the code sets the boundaries of the police department's authority to impound. The code contains specific grants of limited impoundment authority, none of which applied here, and it does not give the police power anywhere to enlarge that authority. Under the Fourth Amendment and our standards decision, the issue isn't really whether it was lawfully adopted, it's whether it constrains the discretion of the police officer. So is it, I mean, if we have a written police policy that says if you can't identify the owner of the vehicle, you're encouraged to impound, doesn't that adequately cabin the discretion of the police officer so we don't have to worry about using impoundment as a pretext, using the concern of not knowing the owner and being in a high crime area as a pretext that violates the Fourth Amendment? The law, the procedures certainly do have to cabin the discretion of the police officers, but under this court's case law, those procedures also have to be lawful. That's what this court held in Ibarra. The court said there that because the impound, quote, was made without proper authority under the law, it violated the Fourth Amendment. I think, counsel, I think you're over-reading Ibarra there. I'm a little familiar with that case, too. I know you are, Judge Baldock, but that was a quote from Ibarra, and Ibarra does speak in terms of whether the impoundment was with not simply whether there were procedures that cabin the district court's discretion. This is because procedures that are not lawful are not procedures at all. For example, say that the municipal... Counsel, let me ask you this question. Sure. Did not the district court in this case, he did not determine that there was any pretext involved in what the police officer did, isn't that correct? That's absolutely correct, but the question of pretext, well, first of all, that goes to the community caretaking part. This is not a factual question. It's not a question of what the officer's subjective intent was. It's whether this court... We disagree that it is a factual question. Where are you then? Well, I don't think I can... I haven't challenged that factual finding under clear error review. I don't think I could challenge it, but there's no precedent in this court for review of clear error on any of these points. Review is de novo, and that's because the question is whether or not there's a impoundment was justified by a community caretaking rationale. That's why all of those factors listed in Sanders are relevant. If the only question was whether or not these particular officers subjectively intended to use this as a pretext, none of those factors would matter for anything. It's not a factual question. It's a legal question for the court about whether or not the circumstances were justified under a community caretaking rationale. Turning back... Well, they'll take us through the Sanders factors. First, the car was on private property. That's the first factor. That favors us. Second, the police could have but didn't consult the owner or an employee of the motel about the car temporarily being left there. Third, and relatedly, there's an alternative to impoundment. That's leaving the car there where it was legally parked, assuming the people who worked at the hotel would have allowed that. And fourth, as the district court expressly found, the vehicle was not implicated in a crime. The officers had no reason to believe the car had been stolen. They just couldn't conclusively determine at the time that it was Mr. Venasius. Well, is Sanders different from our case factually in that I thought in Sanders the officers were able to identify the true owner of the vehicle immediately? Yes, that is true. I think Beverly Sanders owned that car and there was never any question about that. But I don't think that's a dispositive difference between the two cases because, well, one, this is a motel parking lot that literally the purpose of a motel parking lot is for people to park overnight. So this concern about leaving the car is really overblown, especially compared to Sanders, where it was a goodwill parking lot. No one expects to leave their car in a retail establishments parking lot overnight. Second, there's no reason for the officers to think that the owner, whoever that might be, turned out to be Mr. Venasia would prefer for the vehicle to be impounded over being left in a motel parking lot. Impoundment is expensive. It's inconvenient. You have to pay the fees to get the car out. Presumably, most people, well, at least the officers would certainly shouldn't have assumed that the owner would prefer impoundment over leaving the car there. But they didn't know who the owner was. How did, I mean, it wasn't like they could rely on Mr. Venasia's permission because they didn't know if he was the owner. How does that play in? Of course not. And we're not saying that they should have just said, Mr. Venasia, we believe you, this is your car. He couldn't prove it and that's fine. But they had every reason to think they'd be able to clear that up pretty quickly. One, they knew who the registered owner was. They couldn't contact him that night. It was nine o'clock p.m., but they had no reason to think this guy just disappeared. Second, Mr. Venasia was being- I thought they did try to contact the owner and did. They did. Yeah. Yeah. They tried to contact him and he didn't pick up the phone. He testified that he didn't get a call, but whatever. They knew the guy's identity. They had a phone number for him. It wasn't like he had just disappeared. Mr. Venasia had been arrested on a traffic violation. He was going to get out very quickly and presumably be in a position to clarify his ownership. So this is really nothing like the Cornegay case, which the government cites on this ownership point where they had no idea who the car belonged to. They had no idea who Mr. Cornegay was and he was being arrested on a felony offense. Let me come back to the original question that was asked of you in regards to the Fourth Amendment question and then how that plays in as to whether or not the conduct here was reasonable. Now, the police department have- they had their own method of acquiring whether or not they should impound the car. That's some curtailing or directing how the police would work in this. So question then in our Sanders cases and all of these in regards to the possibility of pretext. There is a pretext here. You're probably going to win, but my concern is that in this case, one of the main things in looking ultimately at the Fourth Amendment was did the trial court believe the officers and they acted reasonable in their impounding of this and he believes the officers. Now, how do you get around that insofar as our case law is concerned? Because I don't think your case law allows you to that. It is true that the underlying concern behind the Sanders case is avoiding pretext, but Sanders sets out a two-part test that this court has to apply to evaluate whether there's pretext. It's not just a question of saying, well, the district judge believed the cops, so end of story. You have to decide whether or not there were lawful procedures that governed the officer's discretion and whether the Sanders factors, whether the overall impoundment was justified by a community caretaking rationale. This is not a question of fact. It's not a question of fact. The judge's finding really has almost nothing to do with the analysis. Don't we look at the factual situation and govern it by the question of law, whether or not it complies? Of course, there's no question about that. And so that's our argument is that there were no lawful procedures in place. We agree, and Judge McHugh, to get back to your initial point, we agree that these procedures, the police department procedures standing alone did offer enough like cabining of the district court's discretion for that purpose. They do still have to be lawful. That's how we read Ibarra. But consider this hypothetical, for example, say the code had said, police, you cannot impound, no impoundment. And the police wrote out an impoundment policy. No impoundment pursuant to that policy is going to be upheld because they're acting ultra viris. They're acting beyond their power. This case is really no different. That's a more extreme example, but it's the same problem of police acting unlawfully. And the fourth amendment is concerned about that. But what do we do with the statements and testimony from the officers about this vehicle being in a high crime area and concern about it's being either stolen or vandalized? Well, under Sanders, that's a legitimate concern only if there's no reason to think the vehicle will be retrieved. They had every reason to think this vehicle would be retrieved because they knew who the registered owner was. They knew who Mr. Venezia was, and they knew he'd been arrested on as minor of an offense as they come. So that he would be in a position to clarify his ownership of the car. So what Sanders says is that high crime area is often a source of pretext. This is common sense, but it also flows from the idea that impoundment is expensive. Cops shouldn't just be impounding people's cars from high crime areas just because they're high crime areas. Do you dispute that this is a high crime area? No, the cops testified that it was, and we have no basis to dispute that. But if you allow impoundments liberally from high crime areas, you're basically just punishing people who live there because people lose their cars because they're impounded. It's hard to get there. They have to take off work. They have to pay to get their car out. So this is the animating concern in Sanders for why, look, you can only rely on high crime area if you really think the vehicle might just be left there forever. And that's not the case here. That limitation is important just basically to protect people who live in those areas. So I think in that context, the fact that it was in a high crime area, which Judge Briscoe, we do not dispute, is not dispositive. Judge McHugh, if I could get back to your point about the discretion, there's one more thing I would like to say about that. And that's that the government has not made that argument. The government has accepted that, or at least implicitly, that if the vehicle, if the code did not authorize the police to do it, or if they, I'm sorry, I don't want to put words in the government's mouth, if the police did not have lawful authority to do it, that the impoundment was unconstitutional. They have not made this argument that your question suggested that, well, as long as it discretion, we don't care whether or not it was lawful or not. So to the extent that that's a concern that the court had, I don't see that in the government's brief. Maybe Ms. Malani will see that differently. But I think that argument will be waived in any event. Unless the court has further questions, I'll reserve the remainder of my time. Thank you. May it please the court? Elizabeth Ford Malani, again, for the government. I do want to push back on a few things that opposing counsel said in this case. As an initial matter, I don't necessarily agree that the municipal code precluded the impound here to the extent that that was raised. I agree that in Title 10, the factual circumstances set out in the municipal code permitting a private property impoundment, those facts don't apply here. I agree to that point. But I don't agree with counsel's, I suppose, broader assertion that the muni code is the last word on whether or not the impoundment was lawful. And I do want to note that under 4741 of the police department policy, the officers had three different criteria to impound in this case. Those three circumstances in 4741 all applied here. That provision didn't include a limitation for just private or public property. So this court shouldn't read into that a limitation that isn't there. And I also would, I think it was Judge McHugh, you pointed out that under Fourth Amendment law, the concern isn't necessarily, as Opperman stated, the pertinent question is not whether the particular action, in that case, it was a search, was authorized by state law, but whether it was reasonable. Your opponent is correct. You didn't argue this. I don't. Can you point me where in your brief you've raised the argument that it doesn't matter if the police department policy had the force of law? So I think that I talked about how, I'll pull it up. I know that I talked about how the fact that Sanders and Bertine talk about standardized criteria, which need not be law. And I think that that is what, I think that's true in this case. You know, that's the language of Sanders and Bertine is that standardized criteria is what we're looking at. And I can pull that up. It's on page 23 of the answer brief, Your Honor. While it does not carry the force of law, impoundments need only be guided by standardized criteria or policy. That's citing both the language of Bertine and Sanders. The police department here was sufficiently standardized. And I also want to push back on opposing counsel's reading of Ibarra. I don't think that that case should be read to conclude that in order for officers to impound a car, the criteria must be the force of law. First of all, that would be contrary to Bertine, which talks about standardized criteria or a framework in that way. But also Ibarra was looking at the law, it was looking at a Wyoming statute, as well as holdings from the US Supreme Court. I don't recall any mention of some sort of police policy in Ibarra. So I think that that's a sort of a misnomer there that there has to be some sort of indication in law for that to be the case here. I also would push back on opposing counsel's the provision 10.66190B, that's in the municipal code, should be read as some indication that the municipal code, Title 10, and only Title 10, sets forth any provision to impound. And that's the only place from which officers can derive authority to conduct such an impound. I don't think that's appropriate application of the expressio unius doctrine. I think instead, you know, 10.6619A, the provision above what we're talking about here, talks about certain circumstances on public property where impoundments are possible. The second subsection says, but this is not to say we're limiting any other impoundment under Title 10. And I think that the negative implication of at most is that but 10.6619A could limit outside of Title 10. I think that's the most that can be read from that negative implication. So the government's position, again, is that the standardized criteria of Sanders was met in this case. The officers followed a policy here, it sufficiently cabined their discretion, and that policy was not limited to just private or public property impoundments. So I think the first prong of Sanders was certainly met here. Turning to the second- Let me clarify one thing. Yes, Your Honor. Is it your position that the only standardized criteria that this impoundment satisfies is the police department policy? Are you conceding that there's nothing in the municipal code that would authorize this impoundment? Yes, Your Honor. So I agree that under Title 10 of the municipal code, the factual circumstances here don't satisfy those requirements. And I agree that 4741 of the police department policy provided that criteria. But I also will note, I'm happy to file a 28J letter on this, but the officers could not create such impoundment authority. In fact, under Title II of the municipal code, the police officers, it's their duty to prevent crime, detect and arrest offenders, and protect the rights and persons and property. So I don't think it's even fair to say that the police department policy is in contravention of the municipal code. But again, what we're looking at here is the standardized criteria, whether or not that sufficiently cabined the discretion. And in this case, the officers had three different bases to work from, from the police department policy. I would now like to turn to the second prong of Sanders, unless I can answer any other questions on the first prong. Well, is it relevant and should be given more weight if we're talking about an impoundment on private property versus on public property? So Sanders, I don't disagree that Sanders articulates that this is a factor, but that Sanders articulates how an impoundment can still be constitutional if it's on public or private property, or if it's on private property. I don't think that means the fact that this was on private property should be dispositive as to whether or not this impoundment was constitutional or not. Should we should we weigh that factor more heavily if you have private property versus public? I don't think so, Your Honor. I don't think that there's any indication in Sanders as to how these, to weigh these factors. And to the extent that there is this sort of longstanding, longstanding impoundment authority, it does talk about public property, that's in Opperman and Bertin, but sort of the concern in those cases is safety. So I don't think that Sanders necessarily speaks to a circumstance where the car is on public property, but it's not impairing safety, if that makes sense, that sort of factual circumstance. So I don't think that- Counsel, if we're just giving a number of what's in favor of or what's not in favor of, as to Sanders on the public or private property, you would have to agree that that weighs in favor of the defendant in this case, don't you? I'm not necessarily sure that I do agree. Again, because Sanders sets out how private property impoundments can work. But I do agree that the district court seemed to perhaps think that this weighed in favor of the defendant, though it didn't assign much weight to it. But I think that stepping back, it's important when weighing the factors to remember what the factors are trying to get at, what they all pertain to. And that is whether or not there was a pretextual community caretaking function. And in this scenario, the absence of viable alternatives really speaks to that pretext. And that's why I think it should be weighted the most heavily under these facts, that that is just the most- Well, is leaving the car there a viable alternative? Just leave it there. It's in a motel parking lot. What's the harm? So I think a couple of things, Your Honor. First of all, the officers were not able to get ahold of the registered owner, Elsie. I don't recall any testimony at the suppression hearing, and I think I pointed this out in my brief, where Elsie said, I never received a call. But in any event, the district court found that such a call occurred, and the officers were not able to reach Elsie. So that's one prong of it. If the officers were to leave the car in the lot, Elsie may not know. The second prong is the fact that even if defendant bonded out of jail quickly, which is a key point of his argument, I think, even if he were- even if he bonded out of jail quickly, as he apparently did in this case, he still could not lawfully drive it. He didn't have a valid license. He didn't have insurance or registration for the car. And I will point out that in that scenario, let's say the car was left overnight in the lot. Again, the officer explained how this is a high-crime area with significant high-priority calls involving motor vehicles and trespasses. The officer agreed with those characterizations. If the defendant had bonded out and taken the car, Elsie would certainly never know where the car was located. So I think the officers made the best choice under the facts available to them at the time, and concluded that the only alternative was just not prudent in this case. Counsel, as I understand it, your opposing counsel is that the facts don't matter in this case. I think I disagree with that, Your Honor. I think the facts matter enormously. In any Fourth Amendment analysis, the key question is reasonableness, of course. And I think the facts here color the fact that the officer's choice here to impound and tow the car was reasonable. And I think the facts certainly bear that out, that the only option was leaving the car in the motel parking lot, but it just wasn't a good option under these The Kornegay case is really helpful in this scenario. Again, it was on private property, but it really underscored how the lack of prudent alternatives can tie the officer's hands to do anything but impound the car. And just not to step back too far, but I will also point out that given the standardized criteria in this case, the officers would have been in contravention of their policy likely had they not impounded the car in this case. Again, those policies talked about how impounding here was encouraged. Well, in Kornegay, they had no reason to believe that the driver would return quickly because of the severity of the crime. Here, it is a traffic offense. Doesn't that distinguish from Kornegay? It is a factual distinction, Your Honor, but I don't think it's one with a difference. Well, an important factual distinction. I mean, it has to do with how long is the car going to be sitting on the motel parking lot before he can return? Well, I think that also you can't forget and put aside the fact that the defendant or the officers here still didn't know who owned the car. So as I mentioned, if LC was in fact the registered owner and the defendant did, as was logical in this case, bond out quickly, if he came back and took the car, LC would certainly never know where the car was. So that's why I say, Your Honor, I think that that is a factual difference, but it's not necessarily one that changes the analysis here in any meaningful way. The Stoller case, which is cited in Kornegay, is also helpful in this regard. Similarly, the officers, I believe that the defendants there were arrested on felony charges. But again, the fact here that the officers did not know who owned the car made it so that even if the defendant came back quickly, that could create even more problems from a law enforcement perspective. So briefly, I'd like to go through the other factors quickly. But again, I think this factor, the absence of viable alternatives to impoundment is really the crux of the second prong here. Again, we've talked about public or private property. Sanders doesn't explain how to weigh these factors to the extent that it weighs in favor of the defendant. I don't think that it surmounts the fact that the absence of viable alternatives exists. The motel owners were not consulted in this case. But as the district court observed, even if the motel owners had been consulted, they would not be able to clarify for the officers who owned the car. And that was the key of the officer's impoundment decision here was the unknown ownership of the car. The vehicle wasn't implicated in a crime. And so I think that that could perhaps weigh in favor of the defendant, but it doesn't outweigh the absence of alternatives here. And whether the owner or impound, of course, the officers did not know who the owner was. And so that's why they couldn't obtain consent. So I think that on balance, the absence of alternatives, should they have attempted to call this LC more than once and then late at night, their policy only talked about communication, I'm not sure that their police department policy required them to call multiple times. I'm not going to say that maybe they shouldn't have called multiple times. But I think that the fact that they were able to do so made their actions unreasonable. And I think that it was the community, there was testimony about how the communication center was involved in this, and that they weren't able to reach LC at that one time they called him. So again, I think on balance, the both of the Sanders criteria are met. In this case, the reasonableness of the impoundment and the towing is supported by the facts as they were elicited at the suppression hearing. And unless I can answer any further questions from the court, I would encourage this court to affirm the district court suppression ruling. Thank you. I have just a couple points I'd like to make in rebuttal. The first is in relation to this, whether the government made this argument in their brief about, you know, it doesn't matter if it's lawful so long as it happens discretion. If you look at they cite this page 23, if you look at what they're saying there on page 23 in context, what they're saying is actually something very different. It's that if the impoundment was allowed by the code, then it doesn't matter if the policy has the force of law or not. So it's not that it can contradict the code and it doesn't matter. It's that assuming it complies with the code, it doesn't matter that it actually carries the force of law. I, of course, agree with that. There's nothing that requires the police department procedures to carry the force of law. What is required, however, is that they in fact be lawful. And that is a separate point that was not made in the government's brief. Second, this citation for the first time at oral argument of chapter 2, you know, I'm not really prepared to respond to that because we didn't, that wasn't in the government's brief, but it doesn't sound like it really adds anything. It sounds like it was just a generalized duty to protect property and doesn't say anything about impoundment in particular anyway. And if I could just make one more point, I obviously do think the facts matter. I just think this is a legal question reviewed de novo. You apply the legal standard to the facts, but in the end, this is a legal question for the court. Unless the court has further questions, I can see the rest of my time. Thank you. Thank you. Thank you both for your arguments this morning. They're very helpful. The case is submitted.